IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARDELL WALKER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-00664 -MAB |
| | ) |
| DANIEL HARRIS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Daniel Harris's motion, and supporting memorandum, for summary judgment (Docs. 32, 33). Plaintiff filed his response to the motion for summary judgment on November 2, 2020 (Doc. 41) and then filed another response on December 15th (Doc. 43). For the reasons set forth below, the motion is **GRANTED**.

### BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 19, 2019 for deprivations of his constitutional rights while incarcerated at Pinckneyville Correctional Center ("Pinckneyville") (Doc. 1, 8). Initially, Plaintiff claimed that while he was housed at Pinckneyville, he was subjected to unconstitutional conditions of confinement and that officials acted with deliberate indifference to his serious medical needs. Additionally, Plaintiff alleged that the Warden of Pinckneyville violated his Fourteenth Amendment due process rights by mishandling his emergency grievance

dated May 30, 2019 (Docs. 1, 8). After a threshold review, pursuant to 28 U.S.C. § 1915A, Plaintiff's original complaint was dismissed, and he was allowed to submit an amended complaint, which he did on September 27, 2019 (Doc. 9). The Court conducted a second threshold review pursuant to 28 U.S.C. § 1915A, and Plaintiff's complaint was dismissed yet again (Doc. 12). Plaintiff was allowed again to file a second amended complaint, which he did on December 9, 2019 (Doc. 15). The Court conducted a third threshold review, after which Plaintiff was allowed to proceed on one count against Defendants:

> **Count 1:** Eighth Amendment deliberate indifference to medical needs claim against Officer Harris and John Doe #1 Doctor for failing to provide Plaintiff with medical care after his seizure.

(Doc. 18).

Plaintiff had until September 24, 2020 to identify the John Doe Defendant (Doc. 27). Plaintiff did not identify the John Doe Defendant by this deadline, so this Defendant was dismissed by the Court on October 7, 2020 (Doc. 30). Plaintiff filed two responses to the motion for summary judgment: one on November 2, 2020 and another on December 15, 2020 (Docs. 41, 43). Because the parties' filings do not involve a genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light

most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was

required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as

---

[1] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## FACTUAL BACKGROUND

At all relevant times, Plaintiff has been an inmate with the Illinois Department of Corrections ("IDOC"). He is currently housed at Pinckneyville and filed this lawsuit regarding events that took place also at Pinckneyville (Doc. 33, p. 2).

On or around May 3, 2019, Plaintiff was placed in a single-man cell. Two days later, Plaintiff suffered a seizure and fell, bruising his face (Doc. 18, p. 2). Plaintiff attempted to inform Defendant Harris about his injuries, but Defendant Harris did nothing (*Id.*).

On May 30, 2019, Plaintiff filed an emergency grievance regarding being placed in a single-man cell despite having a seizure disorder (Doc. 33-2, p. 3). This grievance is numbered "1651-05-19." *Id.* On June 6, 2019, this grievance was deemed a "non-emergency" and returned to Plaintiff. *Id.* In this grievance, Plaintiff wrote that he fell in his cell due to a seizure and feeling lightheaded (Doc. 1, p. 5). He then described that "no one was here for me to get treatment or help. My face is bruised from falling to the floor.

I feel like I could have been out forever but it stoped[sic] slowly." *Id.* Plaintiff does not list any specific names in this grievance. *Id.*

Defendant submitted an affidavit from Sherry Benton, Chairperson of the Office of Inmate Issues for the Illinois Department of Corrections (Doc. 33-3). This office is also known as the Administrative Review Board ("ARB") (Doc. 33, p. 2). The ARB maintains a log of grievances it receives from inmates. *Id.* This log is called the "IGRV" (*Id.* at pp. 2-3). Chairperson Benton reviewed Plaintiff's IGRV from January 1, 2019 to the present, and the IGRV shows that the ARB has not received any grievances from Plaintiff (*Id.* at p. 3; Doc. 33-3).

Plaintiff contends that Defendant Harris was assigned to his wing when Plaintiff had his seizure, so he should be aware of what happened to him (Doc. 41, p. 3). Plaintiff also admits that he filed grievance numbered "1651-05-19" and when the staff replied that it was a non-emergency, he "decided to file a complaint because this situation was not taking cared for" (Doc. 43, p. 2). Plaintiff does not argue that he filed any other grievances related to his May 2019 seizure prior to filing this lawsuit.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendant Harris contends that Plaintiff's one grievance in the record was not properly exhausted, as it was never sent to the ARB. Plaintiff agrees that he never sent the grievance to the ARB, but argues

that this grievance was properly exhausted. The Court agrees with Defendant Harris that this grievance was not properly exhausted.

Grievances filed as emergencies are sent directly to the warden of the institution. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Plaintiff's May 30, 2019 emergency grievance was sent directly to the warden (Doc. 1, p. 5). The warden received this grievance on June 4, 2019 and returned this grievance to Plaintiff the same day. *Id.* On the grievance, the warden indicated that he deemed the grievance as a "non-emergency." The form instructed Plaintiff to resubmit his grievance as a regular grievance, which Plaintiff admits he did *not* do. *Id. See also* Doc. 43, p. 2. Plaintiff explicitly stated in his response to the motion for summary judgment that because the staff replied that his grievance was a "non-emergency," he decided to file a complaint instead (Doc. 43, p. 2). As such, Plaintiff admits he did not re-submit this grievance and he did not properly exhaust his claim before filing this lawsuit. Supporting this finding is the record from the ARB, which shows that Plaintiff never submitted a grievance regarding his seizure and the events outlined in his complaint before filing this

lawsuit (Doc. 33-3).

Additionally, even if Plaintiff had properly submitted this grievance through the appropriate institutional channels and then to the ARB prior to filing this lawsuit, the contents of this grievance are not specific enough to exhaust the claim against Defendant Harris. Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

The Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c). The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved

in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner *in his position*." *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010).

Here, Plaintiff specifically states in his grievance that no one was around and he does not provide any description of guards or other IDOC employees who may have seen his seizure (Doc. 1, p. 5). He also does not describe talking to any IDOC employees or Defendant Harris, in particular, to let them know about his seizure. While a plaintiff is not always required to provide specific names in their grievances, they do have to describe the incident in enough detail to alert the facility of a problem and invite corrective action. Simply put, the grievance at issue does not refer to Defendant Harris by name, title, or description, nor does it describe any conduct attributable to him. Accordingly, Plaintiff has failed to exhaust his administrative remedies prior to filing his lawsuit and Defendant Harris's motion for summary judgment must be **GRANTED**.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED.** Defendant Harris is **DISMISSED without prejudice** from this action. Plaintiff's claim **DISMISSED without prejudice** for Plaintiff's failure to exhaust.

IT IS SO ORDERED.

DATED: August 2, 2021

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**